# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ALETA ROSE GOODWIN; et al.,

     Plaintiffs - Appellants,

v.

COUTRYWIDE HOME LOANS, INC.,
A New York corporation; et al.,

     Defendants -
Appellees.

and

FEDERAL HOUSING FINANCE
AGENCY AS CONSERVATOR OF
FANNIE MAE AND FREDDIE MAC,

Intervenor.

**No. 11-17667**

**District Court No.
3:09-cv-00306-ECR-PAL
District of Nevada, Reno**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

## <u>OPENING BRIEF OF APPELLANTS</u>

Robert R. Hager
Treva J. Hearne
HAGER & HEARNE
245 E. Liberty St., Ste. 110
Reno, NV 89501
Tel: (775) 329-5800
Fax: (775) 329-5819

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................... 2

I.        JURISDICTIONAL STATEMENT .................................................. 5

II.       STATEMENT OF ISSUES .................................................. 5

III.      STATEMENT OF CASE .................................................. 6

IV.       STATEMENT OF FACTS.................................................. 7

V.        SUMMARY OF THE ARGUMENT.................................................. 9

VI.       ARGUMENT ..................................................................................10

   A.  There were Substantial Errors in the Establishment of the MDL
   Court's Jurisdiction...................................................................10

     1.      The J.P.M.L.  Erred In Transferring The Cases To The MDL Court......11

       a)      The Actions Were Not Sufficiently Complex And / Or Numerous To
          Justify Transfer Because The Common Question Among The Cases
          Was Simply The Legality Of MERS' Actions Under Specific State
          Laws. ...............................................................................12

       b)      The California And Arizona Actions Did Not Share Sufficiently
          Common Questions Of Fact Because The Only Common Thread Was
          MERS, While The Bulk Of The Factual Allegations Were Related To
          Actions By Individual Defendants Under State Non-Judicial
          Foreclosure Laws...............................................................14

       c)      The Purpose Of Multidistrict Litigation Was Not Served By The
          Consolidation Of Nevada Actions With Actions From Arizona
          And California Because It Did Not Promote Efficiency Or
          Convenience. ...................................................................16

       d)      The J.P.ML Erred When It Transferred The Actions To The
          Transferee Court In The District Of Arizona Because The Majority Of
          Plaintiffs And Witnesses Were In Nevada, The Nevada District Court
          Had More Experience With The Pretrial Issues Of The Case, And The
          Arizona Court Was Incapable Of Properly Administering A Case Of
          This Type...........................................................................20

       e)      The MDL Court Granted A Motion to Amend Complaint Which The
          District Court Then Ignored Due To The Confusion Regarding
          Jurisdiction.
          **Error! Bookmark not defined.**

1

B. THE COMPLAINT SHOULD NOT HAVE BEEN DISMISSED.................................24

   1. The District Ignored the Allegations Made in the Complaint and Improperly Applied the Legal Standard for Motions to Dismiss. ..........24

   2. The District Court Abused Its Discretion When It Denied Appellants' Request for Leave to Amend. ..............................................27

**VII. CONCLUSION** ...........................................................................**28**

**VIII. STATEMENT OF RELATED CASES** ...........................................**29**

**IX. CERTIFICATE OF COMPLIANCE** ...............................................**29**

## Table of Authorities

### Cases

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ........................25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)................................................................................................................25

*Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963) ......................................................................................................27

*In re 21st Century Productions Inc. "Thrilsphere" Contract Litigation*, 448 F. Supp. 271 (J.P.M.L. 1978)...................................................................................13

*In re Admission Tickets*, 302 F. Supp. 1339 (J.P.M.L. 1969)..................................15

*In re Allegheny Energy, Inc., Securities Litigation*, 259 F. Supp.2d 1368 (J.P.M.L. 2003) ..............................................................................................................17

*In re Ampicillin Antitrust Litigation*, 315 F. Supp. 317 (J.P.M.L. 1970)...............23

*In re Best Buy Co. Inc., Restocking Fee Sales Practices Litigation*, 528 F. Supp.2d 1363 (J.P.M.L. 2007)...................................................................................12

*In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F. Supp.2d 1377 (J.P.M.L. 2005)...............................................23

*In re Boscov's Dept. Store, LLC, Fair and Accurate Credit Transactions ACT (FACTA) Litigation*, 528 F. Supp.2d 1341 (J.P.M.L. 2007) ...............................23

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504 (J.P.M.L. 1976) ..........................................................................................21, 22

*In re Caesars Palace Securities Litigation*, 360 F. Supp. 366 (S.D. N.Y. 1973)....17

*In re Drowning Incident at Quality Inn Ne., Washington, D. C., on May 3, 1974*, 405 F. Supp. 1304 (J.P.M.L. 1976).....................................................................18

*In re Eli Lilly & Co. Oraflex Products Liability Litigation*, 578 F. Supp. 422 (J.P.M.L. 1984) ....................................................................................................12

*In re Garrison Diversion Unit Litigation*, 458 F. Supp. 223 (J.P.M.L. 1978) ........12

*In re Grand Funk R. R. Trademark Litigation*, 371 F. Supp. 1084 (J.P.M.L. 1974) ...................................................................................................15, 16, 17

*In re Industrial Wine Contracts Securities Litigation*, 386 F. Supp. 909 (J.P.M.L. 1975) ...................................................................................................22

*In re Magic Marker Securities Litigation,* 470 F. Supp. 862(J.P.M.L. 1979).........12

*In re National Sec. Agency Telecommunications Records Litigation,* 474 F. Supp.2d 1355 (J.P.M.L. 2007).............................................................................17

*In re Pan American World Airways In. Maternity Leave Policies Litigation,* 414 F. Supp. 1232 (J.P.M.L. 1976)....................................................................12, 18

*In re Parmalat Securities Litigation,* 350 F. Supp.2d 1356 (J.P.M.L. 2004)..........17

*In re Pharmacy Ben. Managers*, 452 F. Supp.2d 1352 (J.P.M.L. 2006) ...............17

*In re Photocopy Paper*, 305 F. Supp. 60 (J.P.M.L. 1969)...................................11, 15

*In re Pullen & Associates, LLC, Brokered Group Health Plans Litig.*, 366 F. Supp.2d 1383 (J.P.M.L. 2005)...........................................................13, 14, 19

*In re Raymond Lee Organization, Inc. Securities Litigation*, 446  F. Supp. 1266 (J.P.M.L. 1978) .....................................................................................13

*In re Seroquel Products Liability Litigation*, 447 F. Supp.2d 1376 (J.P.M.L. 2006) ..................................................................................................................23

*In re Sugar Industry Antitrust Litigation (East Coast)*, 471 F. Supp. 1089 (J.P.M.L. 1979) ....................................................................................................11

*In re Travel Agent Com'n Antitrust Litigation*, 290 F. Supp.2d 1381 (J.P.M.L. 2003)..................................................................................................................22

*In re Tri-State Water Rights Litigation*, 481 F. Supp.2d 1351 (J.P.M.L. 2007)11, 17

*In re Vonage Initial Public Offering (IPO) Securities Litigation,* 471 F. Supp.2d 1354 (J.P.M.L. 2007).............................................................................17

*In re Vonage Marketing and Sales Practices,* 505 F. Supp.2d 1375 (J.P.M.L. 2007) ..................................................................................................................17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250 (J.P.M.L. 1983) ....................................................................................................22

*In re Welding Rod Products Liability Litigation*, 269 F. Supp.2d 1365 (J.P.M.L. 2003) ..................................................................................................................23

*In re Westec Corp.*, 307 F. Supp. 559 (J.P.M.L. 1969)...........................................21

*In re Western States Wholesale Natural Gas Antitrust Litigation*, 290 F. Supp.2d 1376 (J.P.M.L. 2003)....................................................................................23

*In re Wyeth Patent Infringement Litig.,* 445 F. Supp. 992 (J.P.M.L. 1978)...........13

*In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 731 F.Supp.2d 1352 (J.P.M.L. 2010) ................................................23

*Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971) .................................................17

3

*U.S. ex rel Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048 (2001)......................28
*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)...................................27
*United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981)...................................27

**Statutes**
28 U.S.C. § 1291...............................................................................................1
28 U.S.C. § 1447.............................................................................................21
28 U.S.C. § 41 ..................................................................................................1

**Rules**

**Fed. R. Civ. P. 15(2)**                                                          **25**

4

# I.  JURISDICTIONAL STATEMENT

The Ninth Circuit Court of Appeals has jurisdiction pursuant to Title 28 U.S.C. § 41 from final decisions of the District Court pursuant to 28 U.S.C. § 1291.  The Notice of Appeal was timely filed pursuant to Fed. R. App. P. 4(a)(1) on October 26, 2011.  [ER 1-5]

# II.  STATEMENT OF ISSUES

A.  Whether the J.P.M.L. Erred in Transferring This and Other Cases to the Multidistrict Court.

B.  Whether the Multidistrict Court Erred in Issuing an Order Re-Interpreting the J.P.M.L.'s  Order Splitting the Claims in This Case.

C.  Whether the District Court Misapplied the Standards of a Rule 12(b) Motion to Dismiss.

D.  Whether the District Court Erred in Dismissing the Case.

E.  Whether the District Court Erred in Denying Leave to Amend the Complaint.

## III.  STATEMENT OF CASE

Aleta Rose Goodwin, Robert Paul Mcartor, Lisa Cheney, Darrin Cheney, and Heather Gabel individually, and on behalf of a class of similarly situated individuals, filed a complaint in the United States District Court for the District of Nevada ("District Court") on June 24, 2009.  [ER 1-5]  The Complaint included ten causes of action: : (1) Violation of Fair Housing Act, 42 U.S.C. 3601, et seq.; (2) Violation of Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.; ( 3) Violation of Nevada Uniform Lending Practices Act, N.R.S. 598D.100; (4) Conspiracy to Commit Fraud; and Conversion; (5) Conspiracy to Commit Fraud Related to MERS System; (6)Unjust Enrichment; (7) Intentional Infliction of Emotional Distress; (8)  Fraud in the Inducement; (9) Injunctive Relief; and (10) Declaratory Relief.  [ER 45-121]

Appellees along with co-defendants in related cases subsequently requested this case, along with others, be combined using the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") established under 28 U.S.C. § 1407.  By Order dated December 7, 2009, the J.P.M.L. transferred to the United States District Court for the District of Arizona ("MDL Court"), all claims related to the alleged MERS "conspiracy to commit fraud" and/or claims "that security instruments are unenforceable or foreclosures are inappropriate due to MERS's presence as a party" or that otherwise concern the "formation and operation" of MERS. [ER 32-

6

35] On March 23, 2010, the MDL Court remanded all of the first and fifth claim, and part of the eighth, ninth and sixth claims back to the District Court. [ER 18-31] Litigation of the "Remanded Claims" is the focus of this appeal.

The Appellees filed multiple motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), [ER 122- 217] which the District Court granted in a single order dismissing the case with prejudice on December 2, 2010 ("Order of Dismissal"). [ER 6-17] The Appellants timely filed their Notice of Appeal on November 11, 2011 pursuant to Fed. R. App. P. 4(a)(1)(A). [ER 1-5]

## IV. STATEMENT OF FACTS

On or about June 24, 2009, Appellants filed a class action on behalf of herself and other similarly situated plaintiffs regarding their MERS deeds of trust and each of their respective homes having been either foreclosed upon or being issued a Notice of Default. (ER 45-121) Each Deed of Trust named MERS, Inc. ("MERS") as the "beneficiary" despite not being entitled to any funds whatsoever from the loan. (ER 42-43)

Linda Barba executed a Deed of Trust dated April 19, 2007 in the amount of $117,118.00 related to the Barba residence located at 3010 Beaverhead Lane, Fernley, Nevada which listed Countrywide Home Loans, Inc. as Lender and which listed MERS as the beneficiary. Ms. Barba also executed a second Deed of Trust

7

dated April 19, 2007 in the amount of $44,279.00 listing Countrywide Home Loans, Inc. as Lender and listing MERS as the beneficiary. The deeds of trust were entered to secure loans to purchase the Barba residence described herein. Per her 2006 federal income tax return, Ms. Barba received income in the amount of $11,160.00 from social security benefits. Her 2007 benefits totaled $12,534.00. Her 2008 benefits totaled $12,820.80. [ER 77-78]  Recontrust Company issued a Notice of Default and Election to Sell the Barba residence on or about February 10, 2009 which was recorded with the Lyon County Recorder on February 11, 2009. Recontrust Company issued a Notice of Trustee's Sale on May 15, 2009 and recorded the notice with the Lyon County Recorder on May 19, 2009. The Barba residence was scheduled for a trustee's sale on June 5, 2009, which was continued to June 19, 2009. [ER 84]

Rosa Diaz and Sergio Diaz executed a Deed of Trust dated October 30, 2006 in the amount of $284,720.00 listing WMC Mortgage Corp. as Lender and listing MERS as the beneficiary related to the Diaz residence at 7186 Truth Drive, Sparks, Nevada. The deed of trust was allegedly security for an adjustable rate note with an initial interest rate of 5.945% which was supplemented by a balloon rider. The Diazes also executed a second deed of trust relating to the same property on October 30, 2006 in the amount of $71,180.00 which listed WMC Mortgage Corp.

8

as Lender and which listed MERS as the beneficiary. [ER 78]  Western Progressive, LLC, as original trustee, issued a Notice of Breach and Default and of Election to Sell the Real Property Under First Deed of Trust on the Diaz residence on April 14, 2009 which was recorded with the Washoe County Recorder on April 14, 2009. The Notice indicates that if the default is not cured by May 19, 2009, the property may thereafter be sold. [ER 84]

John F. Wilburn and Rosalie Wilburn executed a Deed of Trust dated January 12, 2007 in the amount of $308,000.00 related to the Wilburn residence located at 2165 Stone View Drive, Sparks, Nevada which listed Countrywide Home Loans, Inc. as Lender and which listed MERS as beneficiary. [ER 83] Recontrust Company issued a Notice of Default and Election to sell the Wilburn residence on June 2, 2009 which was recorded with the Washoe County Recorder on June 2, 2009. The Notice indicates that if the default is not cured by July 7, 2009, the property may thereafter be sold. The Plaintiffs and/or their family members live in these homes. [ER 88]

## V.  SUMMARY OF THE ARGUMENT

Appellants argue the J.P.M.L. exceeded its discretion in transferring the case to the MDL Court in the first instance, since none of the traditional indices for

multidistrict jurisdiction existed. The "common question" amongst the cases was the legality of MERS under specific state law. By consolidating Nevada cases with cases from California and Arizona and then transferring them to an Arizona judge who had already decided at least one key issue against the Plaintiffs/Appellants, the J.P.M.L. exceeded its jurisdiction. The MDL Court then improperly issued an order "clarifying" this split instead of asking the J.P.M.L. for clarification, resulting in both the Transferee *and* Transferor courts maintaining simultaneous jurisdiction over the same claims.

Forced to defend Motions to Dismiss with claims that were split between two federal jurisdictions, the District Court of Nevada dismissed this case, misinterpreting existing Nevada state law and ignoring the Complaints' allegations. For all of these reasons, the Order Dismissing Case must be reversed and the case remanded to State Court.

## V. ARGUMENT

### A. There were Substantial Errors in the Establishment of the MDL Court's Jurisdiction.

In the establishment of the MDL Court's jurisdiction, there were substantial errors in not only combining the actions from different states, but also in transferring those actions to the District of Arizona, which proved itself incapable

10

of administering such a complex case. There were not sufficient common questions of fact between the different actions, which, in part, were based on violations of state non-judicial foreclosure law, to warrant consolidation. The litigation was not served by consolidation, the consolidation did not promote efficiency but, in fact, created more complexity and increased the litigation costs for the litigants and the judiciary.

### B.   The J.P.M.L.  Erred In Transferring The Cases To The MDL Court.

The Joint Panel on Multidistrict Litigation has been given broad powers to transfer civil actions to a centralized venue for coordination of pretrial litigation, pursuant to 28 U.S.C. § 1407(a).  Under § 1407, consolidation of multiple actions involving common questions of law and fact is appropriate when centralization would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.  *In re Tri-State Water Rights Litigation*, 481 F. Supp.2d 1351, 1352 (J.P.M.L. 2007). Consolidation pursuant to § 1407 is not appropriate, however, "unless the convenience of parties and witnesses is served and the just and efficient conduct of actions is promoted by such a transfer."  *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969).

11

When determining whether transfer is appropriate, inconvenience and expense caused by transfer is to be balanced against any overall savings from convenience of including all suits in coordinated or consolidated pretrial proceedings. *In re Sugar Industry Antitrust Litigation (East Coast)*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979). In order to consolidate pretrial proceedings, questions of fact and law must be similar and "sufficiently complex and/or numerous to justify transfer." *In re Best Buy Co. Inc., Restocking Fee Sales Practices Litigation*, 528 F. Supp.2d 1363, 1364 (J.P.M.L. 2007).

> a) **The Actions Were Not Sufficiently Complex And / Or Numerous To Justify Transfer Because The Common Question Among The Cases Was Simply The Legality Of MERS' Actions Under Specific State Laws.**

Since the creation of multidistrict litigation, actions were required to be complex and numerous in order to justify consolidation to a central district for pretrial litigation. For consolidation to be warranted, common questions of fact must "predominate over individual questions of fact." *In re Eli Lilly & Co. Oraflex Products Liability Litigation*, 578 F. Supp. 422, 423 (J.P.M.L. 1984); *In re Pan American World Airways In. Maternity Leave Policies Litigation,* 414 F. Supp. 1232 (J.P.M.L. 1976). "Where only a minimal number of actions are before the Judicial Panel on Multidistrict Litigation, parties moving for consolidated pretrial proceedings have a strong burden to establish that the common factual questions

12

are sufficiently complex and that the accompanying discovery will be so time consuming as to justify transfer." *Id.; see also, In re Magic Marker Securities Litigation,* 470 F. Supp. 862, 865 (J.P.M.L. 1979)*; In re Garrison Diversion Unit Litigation*, 458 F. Supp. 223 (J.P.M.L. 1978)*; In re 21st Century Productions Inc. "Thrilsphere" Contract Litigation*, 448 F. Supp. 271 (J.P.M.L. 1978);  *In re Raymond Lee Organization, Inc. Securities Litigation*, 446 F. Supp. 1266 (J.P.M.L. 1978).

    In *In re Wyeth Patent Infringement Litig.,* 445 F. Supp. 992, 993 (J.P.M.L. 1978), the J.P.M.L. decided that "discovery in each action [focused] on highly complex and technical material concerning both the technology involved in the manufacture of PET bottles and the validity of the Wyeth patent."  Despite the complex subject matter, the J.P.M.L. concluded transfer would be inappropriate since the movant failed to establish its burden to show the "common factual questions [were] sufficiently complex or that the accompanying discovery w[ould] be so time consuming as to justify transfer." *Id.* The Wyeth Panel added, "suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery." *Id.* Deciding *In re Pullen & Associates, LLC, Brokered Group Health Plans Litig.*, 366 F. Supp.2d 1383, 1383 (J.P.M.L. 2005), the J.P.M.L. declined to consolidate actions because the seven cases were neither complex nor numerous to consolidate.

13

In this case, the J.P.M.L. was presented with six actions challenging the legality of the MERS System, which required application of state-specific real estate law. Four of the six actions were already pending in the United States District Court of Nevada. The basis of the complaints was that the MERS System was a sham, and neither MERS, nor any assignee of MERS, had an interest in the Plaintiffs' Deeds of Trust. Unlike *Wyeth*, the common facts did not involve complicated material or technology; rather, the common issues were whether the formation and operation of MERS resulted in injuries to the Plaintiffs.[1]  In addition to lacking complex common facts, the present case had even fewer actions to be consolidated than *Pullen*.  Because the common facts were neither complicated or numerous, consolidation via § 1407 was improper.

> **b)     The California And Arizona Actions Did Not Share Sufficiently Common Questions Of Fact Because The Only Common Thread Was MERS, While The Bulk Of The Factual Allegations Were Related To Actions By Individual Defendants Under State Non-Judicial Foreclosure Laws.**

"Existence of common questions of fact among civil actions pending in different districts is the initial criterion which must be satisfied before any such

---

[1]  In fact, the simplicity of the formation and operation of MERS is illustrated by the fact that it is commonly explained in several paragraphs. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038-39 (9th Cir. 2011).

14

actions may be transferred under this section relating to coordinated or consolidated pretrial proceedings for multidistrict litigation."[2] *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969)  In *Grand Funk R.R. Trademark Litigation*, 371 F. Supp. 1084, 1084 (J.P.M.L. 1974), a band (Grand Funk) independently embarked on a nationwide concert tour, and their manager concurrently brought twenty-nine actions involving common questions of fact concerning the validity and ownership of the trademark.  The J.P.M.L. concluded that although the "actions appear to contain limited common questions concerning the ownership of the Grand Funk Railroad trademark… transfer of all the subsequently filed infringement actions to the Southern District of New York at this time would needlessly entangle third parties in the fundamental dispute and only tend to delay the expeditious handling of that action." *Id.* at 1085. Additionally, because "discovery involving defendants' alleged infringement will focus on localized factual issues concerning the nature, scope, extent and effect of the alleged promotional activities," the J.P.M.L. found that transfer of the actions would neither serve the "convenience of the majority of the parties and witnesses nor promote the just and efficient conduct of the litigation." *Id.*

---

[2] *See also In re Admission Tickets*, 302 F. Supp. 1339 (J.P.M.L. 1969) ("Existence of one or more common questions of fact is statutory predicate for transfer of cases to single district for coordinated or consolidated pretrial proceedings.")

In this case, the <u>only</u> common question of fact among the cases was whether the MERS System was a sham.  Because MERS is merely an electronic recording system used by the other defendants,[3] the remaining focus of litigation concerned the nature, scope, extent and effect of the use of the façade that is the MERS System.  Just like *Grand Funk R.R.*, the heart of discovery was the alleged wrongful actions made on behalf of MERS by Defendants who signed misleading and invalid documents as "authorized signatories" of MERS. While MERS was effectively touring the country designated as nominee or beneficiary on all the loans, discovery would focus mainly on the local defendants, and thus consolidation was unnecessary.  The J.P.M.L therefore erred when it combined all six cases and transferred them to Arizona for joint pretrial litigation.

> c)    **The Purpose Of Multidistrict Litigation Was Not Served By The Consolidation Of Nevada Actions With Actions From Arizona And California Because It Did Not Promote Efficiency Or Convenience.**

While there are many considerations when determining whether consolidation of several actions in one district is appropriate under § 1407, no transfer is appropriate unless it accomplishes the purpose of the jurisdictional

---

[3] In fact, it was common knowledge at the time of the transfer that MERS rarely took any action itself; rather, the other Defendants, known as "MERS members," took action on behalf of MERS by use of "authorized signatories" as alleged in the CAC.  (ER * )

statute which is to: (1) serve the convenience of the parties and witnesses;[4] (2) promote just and efficient conduct of the litigation;[5] (3) eliminate duplicative discovery;[6] (4) prevent inconsistent pretrial rulings;[7] (5) and conserve the resources of the parties, their counsel, and the judiciary.[8]  Consolidation of cases is inappropriate where the transfer and addition of actions would "needlessly entangle … and only tend to delay expeditious handling of action."[9]

In the present case, all actions alleged either a statutory violation of the respective state's non-judicial foreclosure law, or simply claimed the common law tort of wrongful/unlawful foreclosure.  (ER 36-66)  As a result, the actions pending in Nevada were based upon Nevada law and the two actions in California and

---

[4] *Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504 (J.P.M.L. 1976);  *In re Caesars Palace Securities Litigation*, 360 F. Supp. 366 (S.D. N.Y. 1973).

[5] *In re Westec Corp.*, 307 F. Supp. 559 (J.P.M.L. 1969).

[6] *In re Parmalat Securities Litigation,* 350 F. Supp.2d 1356 (J.P.M.L. 2004); *In re Allegheny Energy, Inc., Securities Litigation*, 259 F. Supp.2d 1368 (J.P.M.L. 2003).

[7] *In re Vonage Marketing and Sales Practices,* 505 F. Supp.2d 1375 (J.P.M.L. 2007);  *In re National Sec. Agency Telecommunications Records Litigation,* 474 F. Supp.2d 1355 (J.P.M.L. 2007).

[8] *In re Pharmacy Ben. Managers*, 452 F. Supp.2d 1352 (J.P.M.L. 2006); *In re Vonage Initial Public Offering (IPO) Securities Litigation,* 471 F. Supp.2d 1354 (J.P.M.L. 2007); *In re Tri-State Water Rights Litigation*, 481 F. Supp.2d 1351 (J.P.M.L. 2007).

[9] *In re Grand Funk R. R. Trademark Litigation*, 371 F. Supp. 1084 (J.P.M.L. 1974).

17

Arizona were based upon their respective states' law. Consolidating two individual actions based upon differing state law with four actions based upon yet another state's law needlessly entangled and delayed the expeditious handling of the actions. Tripling the legal analysis in order to add two actions to four others simply does not promote just and efficient conduct of the litigation.

Likewise, consolidation of actions is not appropriate when "plaintiffs can take certain measures to avoid unnecessary duplication."[10] Suitable alternatives to a transfer under § 1407 include: seeking an appropriate order to make discovery taken in either action applicable to the other; filing notices for a particular deposition in all relevant courts; thereby, making the deposition applicable in each jurisdiction; seeking orders from applicable jurisdictions, that directed the parties to coordinate their pretrial efforts; and seeking a stipulation among the parties that all discovery may be used in both actions. *Drowning Incident at Quality Inn*, 405 F. Supp. at 1306 (*citing* Cf. Manual for Complex Litigation, Part I, Sec. 3.11 (rev. ed. 1973)).

In the present case, all Plaintiffs shared the same counsel, and Defendants' counsel were substantially the same. [ER – JPTM Order] Accordingly, there was

---

[10] *In re Pan Am. World Airways, Inc. Maternity Leave Policies Litig.*, 414 F. Supp. 1232, 1234 (J.P.M.L. 1976); *In re Drowning Incident at Quality Inn Ne., Washington, D. C., on May 3, 1974*, 405 F. Supp. 1304, 1306 (J.P.M.L. 1976).

18

no appreciable risk of duplicative discovery. Inasmuch as Plaintiffs were represented by the same counsel, all of the suitable alternatives were available to them to ensure the just and efficient conduct of litigation. Unlike *In re Pullen*, where the Panel declined to transfer actions because the "two constituent actions with the most commonality, brought respectively by an employer and its employees, [were] already pending in the same district,"[11] all four Nevada actions were pending in the same district and filed by the same counsel.

Further, the risk of inconsistent rulings was irrelevant in this matter because the underlying actions were state actions and thus no federal question requiring uniformity existed. Because the foreclosure laws and real estate laws of each state are different, inconsistency in potential application of state law is irrelevant.

Finally, consolidation did not conserve the resources of the parties, their counsel, and the judiciary. As discussed above, the core of the Plaintiffs' actions was the Defendants' unlawful creation and use of the MERS System. As a result, discovery of each action would be predominated by the local actions of the title companies, foreclosing agents, and their agents; consolidation only serves to

---

[11] *In re Pullen*, 366 F.Supp.2d at 1384.

19

distance the litigation from the place of discovery.[12]  Such a result only serves to drive up the costs of litigation.

Therefore, the J.P.M.L erred when it combined the actions from Nevada, Arizona and California because there did not exist sufficient common questions of fact, nor the required complexity of issues; rather than increase efficiency, consolidation created a more inefficient process and resulted in an incoherent and unfair prejudice to the Plaintiffs.

> **d)  The J.P.ML Erred When It Transferred The Actions To The Transferee Court In The District Of Arizona Because The Majority Of Plaintiffs And Witnesses Were In Nevada, The Nevada District Court Had More Experience With The Pretrial Issues Of The Case, And The Arizona Court Was Incapable Of Properly Administering A Case Of This Type.**

Transfer to a foreign district is not preferred when "convenience of all parties and their witnesses would be best served by leaving the actions in the

---

[12] Such actions include the execution and recording of Notices of Defaults, Notice of Trustee Sales, and Trustee's Deeds Upon Sale, as well as conducting the foreclosure sales. Because these actions are required to be performed in the county where the real property is located, the majority of discovery would take place locally.

[present district] where the parties and witnesses are located." *In re Westec Corp.*, 307 F. Supp. 559, 562 (J.P.M.L. 1969); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 507 (J.P.M.L. 1976). Two-thirds of the actions in this case were pending in Nevada under Nevada law at the time the J.P.M.L. entered its order.

The J.P.M.L. has previously established that "one of the purposes of coordinated or consolidated pretrial proceedings is to streamline the efforts of the parties and witnesses, their counsel and the judiciary in order to effectuate an overall savings of cost and a minimum of inconvenience to all concerned. *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 507 (J.P.M.L. 1976) (citing *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974) *aff'd sub nom. In re Nissan Antitrust Litig.,* 577 F.2d 910 (5th Cir. 1978)). When determining what district will be convenient, the Panel has considered the location of the corporate headquarters of the parties, location of witnesses, geographical area where the majority of discovery will take place, the district in which the majority of the actions are pending, and the district with the most advanced litigation. *In re Bristol Bay*, 424 F. Supp. at 507. Additionally, the J.P.M.L. prefers to transfer the actions to the focal point of discovery. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251 (J.P.M.L. 1983); *In re Industrial Wine Contracts Securities Litigation*, 386 F. Supp. 909

21

(J.P.M.L. 1975); *In re Travel Agent Com'n Antitrust Litigation*, 290 F. Supp.2d 1381 (J.P.M.L. 2003).

In the present case, convenience did not favor consolidation in Arizona. The majority of plaintiffs were located in Nevada, only one action was located in Arizona, and one action was located in California. As a result, the vast majority of the witnesses were also from Nevada. To the extent that some witnesses were located in California or Arizona, Nevada was a more convenient focal point, as it partially separates both states.

Further, two-thirds of the actions were pending in Nevada, and the district court with the most advanced pretrial litigation was in Nevada, which was already contemplating dispositive motions and had already granted preliminary injunctions. In all categories and considering all factors provided by case law, Arizona was not the most convenient venue, especially compared to Nevada.

When selecting a transferee court, the J.P.M.L. should select an "experienced and capable judge,"[13] "experienced in complex multidistrict

---

[13] *In re Ampicillin Antitrust Litigation*, 315 F. Supp. 317 (J.P.M.L. 1970); *In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, U.S.Jud.Pan.Mult.Lit.2010, 731 F.Supp.2d 1352; *In re Welding Rod Products Liability Litigation*, 269 F. Supp.2d 1365 (J.P.M.L. 2003).

litigation,"[14] and capable of "steer[ing] the litigation on a steady and expeditious course." *In re Seroquel Products Liability Litigation*, 447 F. Supp.2d 1376 (J.P.M.L. 2006); *In re Western States Wholesale Natural Gas Antitrust Litigation*, 290 F. Supp.2d 1376 (J.P.M.L. 2003); *In re Boscov's Dept. Store, LLC, Fair and Accurate Credit Transactions ACT (FACTA) Litigation*, 528 F. Supp.2d 1341 (J.P.M.L. 2007).

While the transferee court may have presided over one case involving MERS, the court was clearly incapable of steering multidistrict litigation on a steady and expeditious course. This is illustrated by the fact that it took the court fourteen months to appoint lead counsel for the Plaintiffs. The J.P.M.L. Transfer order was filed December 7, 2009, yet lead counsel was not appointed until February 18, 2011, some 1,263 filings later. Without lead counsel, Plaintiffs were prejudiced by not being unified. The order calling for lead counsel for MERS, on the other hand, was filed *sua sponte* almost exactly one year earlier.

The transferee court was simply not sufficiently experienced in multidistrict litigation and was unable to steer the multidistrict litigation on a steady and expeditious course. Thus, the J.P.M.L erred in transferring the cases to an MDL at all, denying Plaintiffs' requests to transfer the actions to Nevada rather than

_____

[14] *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, 391 F. Supp.2d 1377 (J.P.M.L. 2005).

Arizona and in transferring them to a judge who had already decided major issues against Plaintiffs.

### C.  The Complaint Should Not Have Been Dismissed.

In the present case, the District Court should not have dismissed the Complaint for two independent reasons.  First, the District Court ignored the allegations made in the Complaint.  Second, the District Court incorrectly applied the *Twombly* standard for dismissal.  The District Court also erred in refusing to allow Appellants to further amend the Complaint.

### 1.    The District Ignored the Allegations Made in the Complaint and Improperly Applied the Legal Standard for Motions to Dismiss.

The District Court improperly applied the legal standard for pleading. Federal Rule of Procedure 8 presents a low burden.  Plaintiffs/Appellants need only plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  The Court must accept as true all of

24

Plaintiff's well-pled allegations and resolve doubts in favor of the Plaintiff.

*Twombly*, 550 U.S. at 570 (Emphasis added).  A motion to dismiss "should only be granted if it appears '*to a certainty*' that plaintiff is not entitled to relief under "*any state of facts which could be proved in support of the claim*.'"[15]

The District Court improperly reviewed the Complaint.  It ignored factual pleadings which, at a minimum, offered Appellees sufficient notice of the claims against them.  Specifically, the District Court dismissed the "Fraudulent Inducement " claims concluding that "Plaintiffs' allegations fail to satisfy the particularity requirements of Fed. R. Civ. P. 9(b)."  (ER 12-13)  It further held that "Plaintiffs' claim fails to satisfy the requirements of Rule 9(b) because Plaintiffs fail to allege, inter alia, the names of the person or persons who made the allegedly fraudulent representations, their authority to speak and whether their representations were verbal or in writing and when and where the alleged misrepresentation took place."  [ER 12]  The District Court ruled that Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir. 2007) does not apply because this was not a "routine retail transaction."  Yet no discovery was allowed and no amendments were permitted.  Plaintiffs/Appellants submit this was an error of law.

---

[15] *Id*. (noting that if, "liberally construed," the complaint contained "even one" allegation of a constitutional violation; the plaintiff was entitled to maintain the claim).

The District Court also ruled that the Unjust Enrichment claims failed because "no agreement can be implied when there is an express agreement." [ER 14] Plaintiffs contend that because the loan contracts were procured by fraud, they may proceed under an unjust enrichment theory. However the District Court bootstrapped its decision, holding that even if this were true, "since [they] have not alleged sufficient facts to support a claim for fraud and therefore the written contract guides the relationship between the parties." (ER 14) This completely ignores the fact that the Amended Complaint specifically alleges that:

> 180. Upon information and belief, Defendants …and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in ***fraudulent and predatory lending practices*** perpetrated on Plaintiffs as alleged herein by the actions of the Defendant conspirators as part of the business policies and practices of each Defendant conspirator in participating in the MERS system.***
> 184. Beginning at a time unknown to the Plaintiffs, prior to 2004, and continuing through at least the present, the Defendant co-conspirators engaged in a ***conspiracy to unlawfully deprive borrower-homeowners of property in numerous states through issuing predatory loans*** as described herein, and through securitization and subsequent processes described herein.***
> 187. Upon information and belief, Defendant conspirators, through creation of the MERS system alleged herein, adopted and implemented residential lending underwriting guidelines for use in Nevada and in other states which:
> a. were intended to, and did, generate unprecedented profits for the Defendant conspirators and their co-conspirators at the expense of Plaintiffs and other persons who were ***fraudulently induced*** by the Defendant conspirators and their co-conspirators into

26

taking out residential loans that were known by the Defendant conspirators and their coconspirators, at the time the loans were originated…

(ER 62-70, Emphasis added).

Pursuant to *Twombly*, the District Court was required to "accept as true all of Plaintiff's well-pled allegations and resolve doubts in favor of the Plaintiff." Here, the District Court did the exact opposite.

### 2.    The District Court Abused Its Discretion When It Denied Appellants' Request for Leave to Amend.

Fed. R. Civ. P. 15(2) provides that the court "should freely give leave [to amend] when justice so requires." The Ninth Circuit has stressed that a court must remain guided by "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The standard for granting leave to amend is generous. In *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963), the Ninth Circuit held that leave to amend should be granted if underlying facts provide proper grounds for relief or if the complaint can be saved by amendment. Leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect." *Id.* at 790 (quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)). Further, the Ninth Circuit has held that "[a]bsent a showing of bad faith by the moving party or prejudice to the

opposing party, leave to amend pleadings should be granted *regardless* of the moving party's delay" *Webb*, 655 F.2d at 980 (emphasis added).

Here, Appellees argued to the District Court that the Complaint failed to allege specific facts for each Defendant as to what particular false statement they made or caused to be made to induce Appellants into predatory loans. The Order completely failed to analyze whether an amended complaint would be able to cure such a defect. Further, there was no allegation of bad faith or prejudice to the opposing party, should the District Court grant leave to amend. *See*, *U.S. ex rel Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048 (2001) ("A district court's discretion to deny leave to amend a complaint is not absolute. We consistently have held that leave to amend should be granted unless the district court determines that the pleading could not be possibly be cured by the allegations of other facts.")

Because the amendment would not have prejudiced the Appellees at this juncture of the case, the rules and caselaw allowing for liberal amendment should have been followed. The District Court erred in denying the Motion to Amend.

## VII. CONCLUSION

Because the J.P.M.L. erred when it consolidated the several actions involving MERS and the MDL Court exceeded its jurisdiction by re-interpreting

28

the J.P.M.L. Transfer Order, the Plaintiffs/Appellants were not able to properly litigate their claims. Accordingly, Appellants request this Court REVERSE the District Court's Order Dismissing the case. Further, the District Court erred when it ignored the Appellants' pleadings and misapplied the appropriate legal standard for a Rule 12(b)(6) motion to dismiss. Accordingly, Appellants request this Court REVERSE the District Court's ORDER dismissing the case.

## VIII.  STATEMENT OF RELATED CASES

Plaintiff/Appellant is not aware of any related cases pending in this Court, as defined in Ninth Circuit Rule 28-2.6.

## IX.  CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P 32(a)(7)( C) and the Ninth Circuit Rules 32-1, the attached opening brief is proportionately spaced with a typeface of 14 points, in Times New Roman font, generated in the Microsoft Word processing software, and contains approximately __27_ pages, containing ___6,693___ words.

DATED this 11th day of June, 2012.

                         _/s/ Treva J. Hearne_

                         TREVA J. HEARNE, ESQ.
                         HAGER & HEARNE
                         245 E. Liberty St., Suite 110
                         Reno, NV 89501
                         (775) 329-5800
                         Attorney for the Appellants


## CERTIFICATE OF SERVICE


I certify that I am an employee of HAGER & HEARNE and I hereby certify that

on today's date the OPENING BRIEF was electronically transmitted to the Clerk

of the Court using the CM/ECF System which will send notification of such filing

and transmittal of a Notice of Electronic Filing to all CM/ECF registrants. The

EXCERPTS OF RECORD, VOLUME 1 was sent to the Clerk of the Court via

Federal Express.


DATED this 11th day of June, 2012.



                         /s/ Jennifer Sharp_____

                         JENNIFER SHARP